Vol. 313]        OCTOBER TERM, 1925.        283

State ex inf. Chaney v. West Mo. Power Co.

THE STATE ex inf. W. L. CHANEY, Prosecuting Attorney of Johnson County, v. WEST MISSOURI POWER COMPANY et al., Appellants.

### Division One, March 12, 1926.

1. **FRANCHISE: Void Incident of Grant: Emphasizing Non-Exclusiveness of Main Grant.** A provision in the electric-light franchise by which the city, in consideration for three arc lights to be furnished free of cost, granted to the grantee, his heirs and assigns, "the exclusive right to operate electric lights and electric motors within the city for one year after the last 2000-candle-power lamp is ordered by the city," was merely incidental to the main purpose of the ordinance, is separable, and if void does not affect the validity of the ordinance as a whole, and is of no consequence except that it gives emphasis to the fact that the rights and privileges granted in perpetuity were not intended to be exclusive.

2. **CITY FRANCHISE: Exclusive Privilege: Irrevocable: Local Law: Constitutional Inhibition.** The provisions of the Constitution declaring (a) that the Legislature shall not enact a law "making any irrevocable grant of special privileges or immunities" or (b) any local or special law "granting to any corporation, association or individual any special or exclusive right, privilege or immunity" prohibit the granting by municipal ordinance of a special privilege or immunity, whether revocable or irrevocable. But the non-exclusive right, granted by a city to an individual and his assigns, to enter and occupy the streets and thoroughfares for the purpose of constructing and operating a public utility, although necessarily local and special, and although stated to be perpetual, is not a special privilege or immunity. To be such it must be a right or privilege or power granted to a person or class to the exclusion of all others and in derogation of the common law.

3. ————: **Perpetual: Twenty Years.** The statute (Laws 1887, p. 74) authorizing a city of the third class, by ordinance, to make contracts with and authorize any person or company to erect electric light works and to give to such person or company "the exclusive privilege" of furnishing electricity to light the street, lanes and alleys in said city "for any length of time, not exceeding twenty years," merely authorized the making of a contract for city lighting for a period not exceeding twenty years, and had nothing to do with the duration of the franchise contemplated. The statute is

silent as to the time for which the right might be granted, and therefore an ordinance declaring that "the rights and privileges herein granted shall be for the purpose of operating electric lights and electric motors only, and for that purpose it shall be continuous and perpetual" did not violate the statute.

4. ————: ————: Strict Construction: Relaxation. The rule that legislative grants of power to municipal corporations must be strictly construed and cannot operate as a surrender of legislative power by the State except so far as is expressly delegated or indispensably necessary to the exercise of the power expressly granted, in so far as it relates to the duration of an electric-lighting franchise granted by the city, has been relaxed where later statutes invest effective control and supervision of both service and rates in a public service commission and immense amounts of money are necessary and have been expended to equip and operate the plant, and the statute granting the power does not specify the period of duration. Where no limitation was imposed on the duration of the franchise by the statutory charter of the city or by the general law at the time the city granted the franchise, an ordinance expressly granting the right in perpetuity is valid and effectual for perpetual use.

5. ————: Assignment: Without Consent of State. When the grantee of a grant from the city, made, by ordinance, to him and his assigns, accepted the grant, and constructed conformably to its terms an electric lighting and power plant and put it in operation, he acquired a property right which was assignable, taxable and alienable—an easement in the streets and as such an interest in land; and decisions holding that public service corporations cannot, without the consent of the State, divest themselves of the franchises and property by which alone they can discharge the public duties for which they are chartered, have no application to an assignment of the franchise by such grantee.

6. ————: Forfeiture: Regulation: Transmission of Electricity: Apprehended Danger. The franchise from the city giving to the grantee the right to construct, maintain and operate an electric power and lighting system, and assigned by him to the present public-service corporation, though "continuous and perpetual for that purpose," is subject to forfeiture for misuser, non-user or abandonment; and in addition its exercise is under the dominance of the police power delegated to the city, which it cannot surrender, The city, therefore, has ample power to compel the corporation, in bringing into the city, from its generating plant in another city, a high-tension voltage wire, for the purpose of distributing electricity to local

users, to do so in such manner and under such safeguards as will effectually protect its citizens from any apprehended danger.

Electricity, 20 C. J., Section 20, p. 317, n. 80, 81 New; Section 21, p. 317, n. 93; p. 318, n. 5, 10; p. 319, n. 11. Municipal Corporations, 28 Cyc., p. 263, n. 74, 75; p. 372, n. 45; p. 874, n. 90; p. 875, n. 93; p. 876, n. 95, 99.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall*, Judge.

REVERSED.

*W. E. Suddath, DeArmond & Maxey* and *Busby, Sparrow & Patterson* for appellants.

(1) A grant of a franchise to a person or corporation, "its successors or assigns," is assignable. Owensboro v. Tel. Co., 230 U. S. 58; Louisville v. Tel. Co., 224 U. S. 649; Old Colony Trust Co. v. Wichita, 123 Fed. 762; 26 C. J. 1038; Ft. Smith L. & Tr. Co. v. Kelley, 94 Ark. 461; Commercial E. & L. Co. v. Tacoma, 17 Wash. 661; Wheeling v. Ry Co., 82 W. Va. 308; McCue v. Rommel, 148 Cal. 539; Leonard v. Baylen St. Wharf Co., 59 Fla. 547; San Lino Water Co. v. Estrada, 117 Cal. 168; State v. Western Canal Co., 40 Kan. 96; Detroit v. Mutual Gaslight Co., 43 Mich. 594; Joy v. Jackson Road Co., 11 Mich. 155; Threadgill v. Pumphrey, 87 Tex. 573, 9 Tex. Civ. App. 184; Michigan Tel. Co. v. St. Joseph, 121 Mich. 502, 47 L. R. A. 87; State v. Topeka Water Co., 61 Kan. 547; Kavanaugh v. St. Louis, 220 Mo. 496; Hovelman v. Railroad, 79 Mo. 643; East Tennessee Tel. Co. v. Frankfort, 141 Ky. 588. (2) In September, 1889, the statutes authorized the grant by a third-class city of an electric franchise without ratification by the voters and without limitation as to the term thereof. Lawrence v. Hennessy, 167 Mo. 671; Laws 1887, p. 74, sec. 52, now Sec. 8302, R. S. 1919. (3) Section 15 of Article 2 of the Missouri Constitution does not prohibit the granting of a non-exclusive franchise without limit as to term. Plattsmouth v. Nebras-

ka Tel. Co., 80 Nebr. 460; Omaha Water Co. v. Omaha, 147 Fed. 1, 12 L. R. A. (N. S.) 736; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 43 L. Ed. 341; Old Colony Trust Co. v. Omaha, 230 U. S. 100; Louisville v. Tel. Co., 224 U. S. 649; Collins v. Campbell, 110 Mo. 557; River Rendering Co. v. Behr, 7 Mo. App. 345; State ex rel. v. Schweickhart, 109 Mo. 496.

*H. J. Salbury, Walter L. Chaney, M. D. Aber, S. J. Caudle* and *Charles E. Morrow* for respondent.

(1) The grant in the franchise in question by its terms is continuous, perpetual, irrevocable and exclusive and is void. (a) Because a perpetual grant is void at common law unless expressly authorized by the State. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234; City of Joseph v. Joseph Waterworks Co., 171 U. S. 48; Logansport Ry. Co. v. City of Logansport, 114 Fed. 688; Boise City Waterworks Co. v. Boise City, 123 Fed. 232; Boise City v. Water Co., 186 Fed. 705; State v. Railroad Co., 140 N. W. 437; Newson v. Rainer, 185 Pac. 296; Horkin v. City of Moultrie, 136 Ga. 561; Omaha Electric Light Co. v. Omaha, 179 Fed. 455; State v. Des Moines Ry. Co., 140 N. W. 443; 4 McQuillan on Municipal Corp., sec. 1624; Birmingham Co. v. Birmingham St. Ry. Co., 79 Ala. 456; Pettis v. Johnson, 56 Ind. 139; Detroit v. Detroit Railroad Co., 56 Fed. 867; Milhau v. Sharp, 17 Barb. (N. Y.) 435; 28 Cyc. 874-875; 26 C. J. 1034, sec. 76. (b) It is void because by its terms it is an exclusive grant and violates Section 15, Article II, of the Constitution of Missouri which provides that no law making any irrevocable grant of special privilege or immunities shall be passed. Carroll v. Campbell, 110 Mo. 557, 108 Mo. 550; Birmingham Ry. Co. v. Birmingham St. Ry. Co., 79 Ala. 465. (c) The above provision of the Constitution applies as well to ordinances passed by a city as to laws enacted by the Legislature. St. Louis v. Const. Co., 244 Mo. 479. (d) It is void because by its terms it is perpetual and if perpetual

necessarily irrevocable.  State ex rel. v. Road Co., 207 Mo. 54.  A franchise when granted and accepted becomes irrevocable and cannot be revoked, amended or diminished.  Westport v. Mulholland, 159 Mo. 86; Boise Artesian Water Co. v. Boise City, 230 U. S. 84; Shreveport Traction Co. v. Shreveport, 122 La. Law, 1; Michigan Tel. Co. v. St. Joseph, 121 Mich. 502.  (2)  Even if the granting of a perpetual or exclusive franchise is not prohibited by the Constitution, the city had no power to grant a perpetual or an exclusive franchise unless expressly authorized by the Legislature.  The council had no authority to invade the legislative power of their successors by conferring a perpetual or exclusive privilege on anyone. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234; City of Joseph v. Joseph Waterworks Co., 171 U. S. 48; Logansport Ry. Co. v. Logansport, 114 Fed. 688; Boise City Water Works Co. v. Boise City, 123 Fed. 232; Boise City Water Co. v. Water Co., 187 Fed. 705; State v. Railroad, 140 N. W. 437; Newson v. Rainer, 185 Pac. 296; Horkin v. City of Moultrie, 136 Ga. 561; Omaha Elec. Co. v. Omaha 17 Fed. 455.  (3)  The Legislature had not only not authorized the city to make a perpetual grant, but to the contrary had limited all such grants to a length of time not exceeding twenty years.  R. S. 1889, sec. 1519; Laws 1887, p. 74, sec. 52; R. S. 1919, secs. 10172-10173. (4)  The statute did not expressly confer power upon the city to grant a perpetual franchise.  If it had such power it must be, by necessary and inevitable implication, and any doubt must be resolved against such an implication.  State v. Butler, 178 Mo. 272; Carroll v. Campbell, 108 Mo. 550; Citizens St. Ry. v. Detroit Ry., 171 U. S. 48; Water Co. v. Hutchinson, 207 U. S. 385.  (5)  The laws in force at the time of the passage of the ordinance in question limited the grant to a term not exceeding twenty years.  It grants by plain language a perpetual franchise and privilege and openly and purposely defies the constitutional provision prohibiting the passage of any law making an irrevocable grant of special privileges and also

288    SUPREME COURT OF MISSOURI,

State ex inf. Chaney v. West Mo. Power Co.

the statutes then in force limiting the term of such a grant to a period not exceeding twenty years and is void for that reason. Manhattan Trust Co. v. City of Dayton, 59 Fed. 327; Boise Water Co. v. Boise City, 230 U. S. 92. (6) The consent to use the city's public ways by an individual or corporation for the purpose of constructing and operating an electric light plant, could be obtained only from the council and mayor on September 20, 1889, the date of the alleged ordinance; R. S. 1889, sec. 1519; and by a corporation not later than November 1, 1889. R. S. 1889, sec. 2794. On and after November 1, 1889, a grant to a corporation was required to be submitted to and approved by a vote of the people. R. S. 1889, sec. 2794. After June 21, 1893, a grant either to persons or corporations had also to be submitted to a vote of the people. Laws 1893, p. 85. At all the times of the acts of the council and administrative officers of the city, relied upon as a waiver or as an estoppel, it was necessary to such a grant or renewal, that it be passed by the council and submitted to a vote of the people in the particular mode prescribed by statute, and the administrative officers of the city could not waive the necessity of procuring the same in the prescribed manner. R. S. 1889, secs. 1519, 2794; Laws 1893, p. 85, sec. 95; State ex inf. v. Light & Power Co., 246 Mo. 653; Realty & Power Co. v. St. Louis, 282 Mo. 180. The city council had no authority to make the periodical contracts for lighting because there was in existence at the time no franchise. The statute only authorizes such contracts where there was an existing franchise for such purposes. R. S. 1919, sec. 8303. (7) This action is brought by the State itself through its proper officers to enforce the rights of the State. It is not brought by the city or at its relation, and the State is not estopped by the acts of the city officers. State ex inf. v. Light & Power Co., 246 Mo. 653. (8) The franchise if valid is not assignable without the consent of the State. Kavanaugh v. St. Louis, 230 Mo. 496; State ex rel. v. Ry. Co., 140 Mo. 539; 12 R. C. L. sec. 43, p. 217; Oregon Ry. Co.

v. Oregonian Ry. Co., 130 U. S. 1; New Albany Water-
works v. Louisville Banking Co., 122 Fed. 776; 26 C. J.
1037, sec. 87.   Sec. 1519, R. S. 1889, under which appel-
lants claim the grant was made, provides "that the city
may make contracts with and authorize any person, com-
pany or association to erect gas works or electric light
works in said city." This language must be strictly
construed against the grantee and in favor of the public.
It did not authorize the city to make a grant to Freeman
and his heirs and assigns. The statute restricts the grant
to any person, company or association. Oregon Ry. Co.
v. Oregonian Ry. Co., 130 U. S. 1; New Albany Water-
works v. Louisville Banking Co., 122 Fed. 776.

RAGLAND, P. J.—This is a proceeding in *quo war-
ranto*. The respondent, West Missouri Power Company,
is a public-service corporation, engaged, among other
things, in maintaining and operating an electric power
and lighting system in the city of Warrensburg. The in-
formation challenges its right to occupy the streets and
alleys of that city with its poles, transmission lines and
other structures and appliances incident to and neces-
sary for the conveyance and proper distribution of electric
current which it funishes the public. The cause was in-
stituted in Johnson County, but was tried in the Circuit
Court of Jackson County, to which it was sent on change
of venue. The trial resulted in a judgment of ouster.
From that judgment this appeal is prosecuted by respond-
ent, who, unless designated by its proper corporate name,
will hereinafter be referred to as appellant.

There were a number of other corporations named as
respondents in the information, but as their interests, if
any, are merely incidental or subordinate to that claimed
by West Missouri Power Company no further notice will
be taken of them.

As appellant has fairly set forth in respect to com-
pleteness and accuracy the facts which its evidence on the
trial tended to show we adopt its statement with some
slight additions.

"On September 20, 1889, the city of Warrensburg, then and now a city of the third class, by ordinance enacted by its council granted a franchise to Walter K. Freeman, his heirs or assigns, authorizing the erection, maintenance and operation of an electric plant and system in said city, and the placing of poles and wires in the streets and alleys thereof."

That ordinance (deleting portions not pertinent to this controversy) was as follows:

"Section 1. That Walter K. Freeman his heirs, or assigns be, and he is hereby authorized to erect, maintain and operate electric lights and electric motors within the city of Warrensburg, as also the right to construct and maintain necessary buildings, steam-power plant, and such other fixtures as may be necessary for operating electric lights and power, and for the purpose of operating and maintaining the aforesaid, the grantee, his heirs and assigns, may enter upon all streets, avenues, alleys, bridges, or public grounds belonging to or under the control of the city for the purpose of setting poles and stretching wires for conducting the electricity, provided, however, the location of such poles is approved by the street and alley committee of the council.

"Section 2. The rights and privileges herein granted shall be for the purpose of operating electric lights and electric motors only, and for that purpose it shall be continuous and perpetual.    .   .   .

"Section 3. The grantee, his heirs or assigns, in accepting the rights and privileges herein granted, agrees to erect and maintain such arc-light apparatus as may be necessary for the purpose of lighting the streets of Warrensburg and to extend its line to such points along the streets or alleys of the city as may be necessary for the operation of arc lamps of standard 2000-candle power, for the use of which the city agrees to pay the grantee his heirs or assigns, one hundred dollars per annum for each lamp ordered by the council and operated on the Philadelphia schedule until twelve o'clock at night, and one hun-

dred and twenty-five dollars per annum for each lamp operated on the Philadelphia schedule all night.

"Section 4. The grantee agrees to commence immediately and within thirty days after the passage of this ordinance, the work of erecting poles, stretching wires and building suitable buildings for the steam engine and boiler plant, as also to provide for means to operate within ninety days twelve standard lamps of 2000-candle power each, to operate on the Philadelphia schedule until midnight for which the city agrees to pay the sum of twelve hundred dollars per annum payable monthly and the grantee in consideration of the city granting him, his heirs or assigns, the exclusive right to operate electric light and electric motors within the city which they hereby do for one year, and for one year from the date at which the last 2000-candle-power lamp is ordered by the city, agrees to furnish to and maintain for the city's use three arc lamps of standard 2000-candle power, free of cost, said lights to be operated on the Philadelphia schedule under the same rules and regulations as control the use and consideration for other lights operated for lighting the streets of the city. . . ."

"Walter K. Freeman and those associated with him thereupon erected an electric plant and system in the city of Warrensburg and same was completed sometime prior to April 1, 1890. On such date, the plant and all rights to operate same in the city of Warrensburg under said ordinance-franchise were sold and conveyed to Warrensburg Electric Company. The Warrensburg Electric Company operated the plant and system until November 4, 1892, when it sold and conveyed all its property, rights and franchises to Magnolia Light, Heat & Power Company. After operating the plant until June 19, 1907, the last-named company sold and conveyed its property and franchise to the Warrensburg Light & Power Company. The Warrensburg Light & Power Company operated the property until September 3, 1912, when it conveyed it with the franchise to Milan R. Bump, who, with his wife,

conveyed, in November, 1912, to Warrensburg Electric Light, Heat & Power Company.

"On May 30, 1922, Warrensburg Electric Light, Heat & Power Company contracted to sell and convey the property and franchise to Green Light & Power Company, its successors and assigns. On March 6, 1923, in accordance with the terms of said contract and after obtaining authority from the Public Service Commission of the State of Missouri by order of said Commission duly entered of record, the Warrensburg Electric Light, Heat & Power Company conveyed all its property and the franchise above mentioned to West Missouri Power Company, assignee of the Green Light & Power Company.

"The electric plant and system so erected, owned and conveyed is the only electric system ever operated in the city of Warrensburg as a public utility and it has supplied the city and citizens with electric current continuously from the date of its erection until the present time. The building of the plant, adding new machinery thereto, and extending the lines and facilities of the system gradually increased the investment in the property. A certified audit of the books and accounts of the Warrensburg Electric Light, Heat & Power Company offered in evidence shows that the estimated value of the Warrensburg electric property on June 30, 1916, was $195,-404.56. Subsequent additions and betterments from that date to June 30, 1922, were shown to have actually cost $122,544.03.

"Numerous ordinances were shown to have been enacted by the council of the city of Warrensburg, providing for street lighting contracts with the successive owners of the electric property. Some of these ordinances gave authority to the mayor to contract with the electric company for street lighting, while some set forth in the body of the enactment the exact terms and provisions of the contract. Resolutions of the council were passed requiring the electric company to install, maintain and supply electric current for numerous additional street lights.

"On the 18th day of July, 1917, the council enacted an ordinance setting forth a contract with the Warrensburg Electric Light, Heat & Power Company, providing for street lighting service to be rendered by the company to the city for a period of five years from August 1, 1917.

"This contract provided that the company should change the arc-light street lighting system to an incandescent street lighting system, and shall install 140 60-candle power incandescent street lights and 30 Whiteway fixtures at such locations as should thereafter be designated by the representatives of the city.

"The ordinances further contained these conditions:

" 'Fourth. The company agrees to furnish without charge to the city electric current for incandescent lamps for the city hall, calaboose and fire station to the extent of seventy-five kilowatt hours in each month during the term of this agreement for franchise charge. . . .

" 'Eighth. The company agrees that immediately after the installation of incandescent lighting has been made, it will remove from the streets of Warrensburg the present arc lamps and fixtures and will also remove the poles in the Whiteway zone, which are now located on Holden and Pine Streets, the company reserving, however, all of its rights as to using Holden and Pine Streets granted to the company under its franchise from the city of Warrensburg.'

"The testimony showed that the company has fully complied with the requirements of this ordinance-contract; has changed the street lighting system from arc to incandescent, has installed the Whiteway fixtures and removed its poles from the streets mentioned, all at a cost of approximately $12,000.

"The purchase price paid by the West Missouri Power Company for the physical property and franchise of the Warrensburg Electric Light, Heat & Power Company was $288,000.

"Testimony and admissions established the fact that the electric service rendered to the city and public was adequate and efficient.

"After the Green Light & Power Company took over the possession and control of the plant and system on July, 1922, it put into effect two successive reductions in its rates and charges to the public for its electric service. Such company and its successor, the West Missouri Power Company, have by the construction and operation of an electric transmission line from a large central generating station at Clinton, Missouri, to Warrensburg, materially reduced the cost of supplying current at Warrensburg.

"On the 4th day of July, 1922, after the Green Light & Power Company had contracted to purchase the electric property, the city council passed an ordinance declaring that it deemed it necessary to institute legal proceedings to determine the validity of the franchise, providing for the employment of counsel and directing them to institute such legal proceedings as they deemed necessary to determine the validity of such franchise and to prevent the sale of such franchise and the electric utility properties in the city of Warrensburg to the Green Light & Power Company.

"Thereafter this proceeding in *quo warranto* was instituted."

Appellant operated a group of municipal lighting and power plants. As a part of its plan of operating it constructed a large generating plant at Clinton, Missouri, and from thence conveyed electric current of high voltage over transmission lines to the towns to which it furnished lights and power, including the city of Warrensburg. It brought into its power house at Warrensburg over one of its transmission lines a current of 22,000 volts. By means of a transformer the voltage was there reduced and the current then distributed to the local users. The introduction into the city of this high-tension transmission line brought forth a storm of protest on the part of the citizens which finally resulted in the institution of this suit.

At the time of the enactment of the ordinance just quoted from there was in force a statute authorizing cities of the third class to provide for and regulate the

lighting of streets as follows: ''The council may provide for and regulate the lighting of the streets and the erection of lamp posts, and the council shall have power to make contracts with and authorize any person, company or association to erect gas works, or electric light works in said city, and give such persons, company or association the exclusive privilege of furnishing gas or electricity to light the streets, lanes and alleys in said city for any length of time, not exceeding twenty years.'' [Laws 1887, p. 74.]

The power thus conferred was not at that time in any way restrained or modified by any other statutory provision. The section quoted constituted the whole of the statutory charter power with reference to the subject dealt with. The following constitutional provisions, however, are invoked:

''That no *ex post facto* law, or law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly.'' [Cons. Art. II, sec. 15.]

''The General Assembly shall not pass any local or special law: Granting to any corporation, association or individual any special or exclusive right, privilege or immunity, . . .'' [Cons. Art. IV, sec. 53, cl. 26.]

The principal questions presented for solution are these: (1) Were the rights and privileges which the ordinance attempted to confer within the prohibition of the constitutional provisions just quoted? (2) Were they within the purported statutory charter power of the city? (3) If there was a valid grant, were the rights and privileges so granted assignable without the consent of the State? We will first make a brief examination of the ordinance to ascertain the nature of the rights and privileges granted, or attempted to be granted, and then proceed to a consideration of the questions propounded.

I.   Section 1 of the ordinance authorized Walter K. Freeman, his heirs or assigns, ''to erect, maintain and op-

296     SUPREME COURT OF MISSOURI,

State ex inf. Chaney v. West Mo. Power Co.

erate electric lights and electric motors wthin the city of Warrensburg, . . . and for the purpose of operating and maintaining the aforesaid,'' gave ''the grantee, his heirs and assigns'' the right ''to enter upon all streets, alleys, bridges and public grounds belonging to or under the control of the city for the purpose of setting poles and stretching wires for conducting the electricity.'' The right or franchise to enter and occupy the streets and alleys of the city for the purpose of operating and maintaining electric lights and electric motors, so given by Section 1, was by Section 2 expressly made ''continuous and perpetual.'' Sections 3 and 4 of the ordinance spend themselves for the most part in defining the obligations assumed by the grantee, his heirs and assigns, in accepting the rights and privileges granted. But in the latter part of Section 4 this is found: ''The grantee in consideration of the city granting him, his heirs or assigns, the exclusive right to operate electric lights and electric motors within the city which they hereby do for one year, and for one year from the date at which the last 2000-candle-power lamp is ordered by the city, agrees to furnish and maintain for the city's use three arc lamps of standard 2000-candle power, free of cost.'' This language is plain and requires no exposition. In consideration for three lights to be furnished free of cost the city granted Freeman, his heirs and assigns, the *exclusive* right to operate electric lights and electric motors within its borders for *one year,* etc. The securing by the city of three lights free of cost was merely incidental to the main purpose of the ordinance. The provision is therefore separable, and consequently if void does not effect the validity of the ordinance as a whole. [Carroll v. Campbell, 108 Mo. 550, 560.] As it is not otherwise drawn into this controversy no further notice will be given it, except to say that it gives emphasis to the fact that the rights and privileges granted in perpetuity were not intended to be exclusive.

*Incident of Grant.*

State ex inf. Chaney v. West Mo. Power Co.

II.  Section 15, Article II, of the Constitution declares that the Legislature cannot pass a law "making any irrevocable grant of special privileges or immunities," while Section 53, Article IV, prohibits it from passing any *local* or *special* law "granting to any corporation, association or individual, any special or exclusive right, privilege or immunity."  All municipal ordinances, which are enacted under powers delegated by the Legislature, are necessarily local laws. It follows that no special privilege or immunity, whether revocable or irrevocable, can be granted by municipal ordinance.  If then the non-exclusive right to enter and occupy the streets and thoroughfares of a city for the purpose of constructing and operating a public utility is a special privilege or immunity, we have been trampling on the Constitution for a long time.  But no doubt we have heretofore accepted tacitly, if not avowedly, the view generally held that a "special privilege" in constitutional law is a right, power, franchise, immunity or privilege granted to, or invested in, a person or class of persons to the *exclusion of others* and in derogation of common right.  [Guthrie Daily Leader v. Cameron, 41 Pac. 635, 639; City of Plattsmouth v. Nebraska Tel. Co., 80 Nebr. 460; see also Old Colony Trust Co. v. Omaha, 230 U. S. 100; Louisville v. Telephone Co., 224 U. S. 649; Walla Walla v. Water Co., 172 U. S. 1; Omaha Water Co. v. Omaha, 147 Fed. 1.]  The franchise granted by the city of Warrensburg, though perpetual, being non-exclusive, was not a "special privilege or immunity" within the purview of the Constitution.

*Special Privilege.*

III.  The statute heretofore referred to empowers Warrensburg as a city of the third class:  (1)  to provide for and regulate the lighting of its streets; (2) to make contracts with and authorize any person, company or association to erect electric light works in said city;

and (3) to give such person, company or association the exclusive privilege of furnishing electricity to **Perpetual Franchise.** light the streets, lanes and alleys in said city for any length of time not exceeding twenty years. In order to do these things it was inevitable that the right to occupy its streets with structures necessary to convey and distribute electric current should be given. The authority to grant such a right was therefore within the contemplation of the statute, and so much is conceded. But as the statute was silent as to the length of time for which the right might be granted, or rather because it did not expressly authorize the granting of the right in perpetuity, the power to make such a grant is denied. In this connection it should be noted that what we have designated as specification "(3)" of the statute merely authorized the making of a *contract for city lighting* for a period not exceeding twenty years and had nothing to do with the duration of the franchise contemplated.

The determination of whether the statute authorized a city of the third class to grant a perpetual franchise to use its streets for electric lighting purposes is a mere matter of construction. In reaching the conclusion for which it contends in this case the State invokes the well-established rule that legislative grants of power to municipal corporations must be strictly construed and cannot operate as a surrender of legislative power except so far as expressly delegated or is indispensably necessary to the exercise of some other power which has been expressly delegated. From this as a major premise it is argued that while the statute authorized the grant of a franchise, it did not in express terms give the power to grant it in perpetuity and such power cannot be implied, because perpetuity of such a franchise was not indispensably necessary to effect the general purpose of the grant. This method of construing statutes which confer upon municipalities the power to grant street franchises has been generally followed by the courts. It is strained rather than strict construction, but has been deemed necessary on grounds of public policy to prevent the evils of monopoly.

For many years a consideration of the expirations of short-term franchises, with the possibility in every case of a refusal to renew, was practically the only constraint upon public service corporations to cause them to give adequate service at reasonable rates. But recently effective control and supervision of both service and rates have been given public service commissions, and this with the further fact that immense amounts of capital are necessary to equip and operate the present day plants of such utilities as telephone and light and power companies, which must for the most part be procured from the investing public at large, have caused a departure to some extent from the judicial policy above referred to.

In Owensboro v. Telephone Co., 230 U. S. 58, the nature and duration of the right of a telephone company to maintain its poles and wires upon the streets of the city of Owensboro (Kentucky) was presented for determination. The ordinance under which the right was claimed provided "that the Cumberland Telephone Company its successors and assigns, is authorized and hereby granted the right to erect and maintain upon the public streets and alleys of said city any number of telephone poles of proper size, straight and shaved, smooth, set plumb, and kept erect, and any number of wires thereon with the right to connect such wires with the building when telephone stations are established, provided such poles shall be located and kept so as not to interfere with the travel upon said streets or alleys, or the substantial use thereof by the inhabitants of said city." At the time of the enactment of the ordinance there was no general law in Kentucky under which a telephone company could acquire the necessary street easement. But the special charter of Owensboro gave it power "to regulate the streets, alleys and sidewalks and all improvements and repairs thereof." The Supreme Court held that the city of Owensboro under the power to "regulate" its streets and alleys had ample authority to grant a franchise to the telephone company to place and maintain its poles and wires upon

the streets. It further held, in effect, that the city of Owensboro had the power to grant, and by said ordinance did grant, a franchise in perpetuity. The court saying: "The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself or as a consequence of some limitation imposed by the general law of the State, or by the corporate powers of the city making the grant."

The same rule of construction was adopted and followed in Boise Water Co. v. Boise City, 230 U. S. 84, and in Covington v. Street Railway Co., 246 U. S. 413, 418. In the syllabus of the first the rule is tersely stated as follows: "Where there is no limitation in the general law of the State, nor in the charter of the city, as to duration of franchises for public utilities in the streets, the grant of an easement for that purpose, not specifying a period of duration, is in perpetuity."

It is also held in these cases that if such a grant be accepted and the expenditures contemplated by it be made, property rights are thereby created which are within the protection of the Federal Constitution.

At the time the franchise involved in this controversy was granted no limitation with respect to the duration of such franchise was imposed by the general law of the State or by the charters of cities of the third class. It must therefore be held, in view of the decisions just referred to, that the ordinance of the city of Warrensburg in expressly granting a right in perpetuity was valid and effectual for that purpose.

IV. Decisions holding that public service corporations cannot, without the consent of the State, divest themselves of the franchises and property by which alone they can discharge the public duties for which they are

chartered, are not applicable in this case. When Freeman accepted the grant under the ordinance and constructed conformably to its terms an electric lighting and power plant and put it into operation, he acquired a property right which was assignable, taxable and alienable. [Owensboro v. Telephone Co., supra.] The right so acquired was an easement in the streets and as such an interest in land. [Louisville v. Telephone Co., supra.] The written instruments conveying this interest, when acknowledged and certified according to the requirements of the statute, were entitled to record as conveyances of real estate (Sec. 2198, R. S. 1919) and were admissible in evidence without other proof of their execution. [Sec. 2207, R. S. 1919.] In proving the successive transfers constituting the chain of title from Freeman to appellant resort was had for the most part to certified copies of the recorded conveyances. Technical objections, going to the forms of the certificates of acknowledgment in some instances and in others to a failure to lay a proper foundation for secondary evidence, were lodged against some of the documents offered in making this proof. These we have examined and found to be without substantial merit.

The franchise held by appellant, though in perpetuity, is subject to forfeiture for misuser, non-user or abandonment. In addition to that its exercise is under the dominance of the police power delegated the city, which the city did not surrender and could not have surrendered had it attempted to do so. There can be no doubt therefore but that it has ample power to compel appellant, in bringing the high-tension wire into the city, to do so in such manner and under such safeguards as will effectually protect the citizens from the apprehended dangers.

In view of the conclusions we have reached the judgment of ouster must be reversed. It is so ordered. All concur.