256 F.Supp.2d 976 (2003)
XO MISSOURI, INC. and SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiffs,
v.
CITY OF MARYLAND HEIGHTS, Defendant.
No. 4:99-CV-1052 CEJ.
United States District Court, E.D. Missouri, Eastern Division.
February 5, 2003.
*978 Matthew S. Darrough, Lawrence C. Friedman, Thompson Coburn, St. Louis, MO, William L. Davis, Moser and Marsalek, P.C., St. Louis, MO, Howard J. Symons, William A. Davis, Tara M. Corvo, Amy L. Bushyeager, Mintz and Levin, Washington, DC, Daniel Gonzalez, Theodore S. O'Neal, Oak Brook, IL, Renardo L. Hicks, Harrisburg, PA, James W. Erwin, Stephen B. Higgins, John F. Medler, Jr., St. Louis, MO, for Plaintiffs.
Howard Paperner, Devoto Law Offices, St. Louis, MO, R. Henry Branom, Jr., St. Louis, MO, John F. Mulligan, Jr., Clayton, MO, for Defendant.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court upon the plaintiffs' motions for summary judgment. See Fed.R.Civ.P. 56(c). Defendant opposes plaintiffs' motions and has filed a cross-motion for summary judgment.
Plaintiffs Southwestern Bell Telephone Company ("SWBT") and XO Missouri, Inc. ("XO") bring this action against the City of Maryland Heights ("the City") seeking a ruling that Ordinance No.XXXX-XXXX ("the Ordinance") is invalid under Missouri Senate *979 Bill No. 369 ("SB 369"), codified at R.S.Mo. §§ 67.1830-67.1846.

I. Background

On December 7, 2000, the City Council of Maryland Heights adopted the Ordinance. The Ordinance requires providers of communications services:
1) to pay "an annual license fee" equal to the greater of the "per lineal foot fee established from time to time by the City in an annual fee schedule OR five per cent of [the provider of communications service's] gross revenues from the provision for hire of telecommunications services and facilities in the public rights-of-way," where "gross revenues" is defined to include revenues derived "directly or indirectly" by the "Licensee, its affiliates, subsidiaries, parent companies, Lessees, and from any person in whom the Licensee has a financial interest" from the provision of telecommunications services originating or terminating at any location in the City via public right-of-way, see, §§ 4.7(1),(2);
2) to pay an "application fee" of an amount to be fixed by the City Administrator to apply for a "license" to use the public right-of-way, see § 4.5(3);
3) to enter into a "license agreement" with the City, see, § 4.2;
4) to permit City employees to order a provider of telecommunications services to remove facilities from the right-of-way at its own expense and to seize, remove, disable or destroy a provider's facilities in the right-of-way if the City believes that there has been a material violation of the Ordinance, see § 1.12(4)(c).
In addition, the Ordinance imposes the following requirements on providers of telecommunications services without limitation or qualification:
1) to "register" with the City before installing, repairing or operating a communications facility within the City right-of-way, see § 1.6;
2) to obtain "authorization" from the City before installing, repairing, or operating a communications facility within the City right-of-way, see §§ 1.7, 1.8;
3) to furnish to the City maps showing the precise location of all existing facilities within the City right-of-way and to make those proprietary maps available to the City, where they will be able to be obtained by competitors under Missouri's "Sunshine" laws, see § 1.10(1);
4) to pay monetary penalties for ordinance violations, see § 1.12(2);
5) to indemnify and defend the City against lawsuits and judgments relating in any way to communications facilities within the right-of-way, see § 1.18(1);
6) as a condition to using any City right-of-way, to obtain a Commercial General Liability policy of insurance in the amount of Two Million Dollars with a One Million Dollar umbrella policy, see § 1.18;
7) to fill out a detailed application for a license by, inter alia, listing its qualifications to be a telecommunications provider, see 4.5(6)(a); and
8) to allow the City to co-locate its own proprietary facilities on a telecommunication provider's poles or conduits, see § 4.6(1).
On December 7, 2000, the City Council of Maryland Heights adopted Resolution No.2000-631 ("the Resolution") which sets the amount of the per lineal foot fee imposed *980 by § 4.7 of the Ordinance. It establishes a per lineal foot fee calculated as:
For each cable up to four inches in diameter placed in the rights-of-way of the City, an entity must pay $1.74 per lineal foot. For each cable over four inches in diameter placed in the rights-of-way of the City, an entity must pay $.14 per square inch of cross-sectional area per lineal foot. See § B(1).
On May 18, 2001, the General Assembly of the State of Missouri passed Senate Bill 369 which operates to limit the authority of local governments in managing the use of the public rights-of-way by telecommunications companies and in collecting fees from telecommunications companies to recover costs incurred in managing that use of the public rights-of-way. Under SB 369, local governments may impose:
rights, duties and obligations on all users of the rights-of-way... in a reasonable, competitively neutral and nondiscriminatory manner, reflecting the distinct engineering, construction, operation, maintenance and public work and safety requirements applicable to the various users of the public rights-of-way provided that such rights, duties and obligations shall not conflict with any federal law or regulation. R.S.Mo. § 67.1830.6
SB 369 expressly grants local governments the authority to:
1) require construction performance bonds or insurance coverage unless the right-of-way user has at least $25 million in net assets and no history of permitting noncompliance;
2) establish excavation coordination and timing requirements that do not pose a barrier to entry;
3) require submission of maps and other project data "in the form maintained by the user";
4) require notice of right-of-way excavation and the submission of project data;
5) establish permitting requirements for street excavation;
6) establish removal requirements for abandoned equipment facilities that prevent or significantly impair the use of or construction in the right-of-way;
7) establish permit requirements for wireless communications structures;
8) establish standards for street restoration; and
9) impose permit conditions to protect public safety. R.S.Mo. §§ 67.1830.6, 67.1832.
Plaintiffs argue that the regulations and fees of the Ordinance stretch far beyond the limits imposed by SB 369, and are therefore invalid as a matter of law. Defendant argues that SB 369 violates the following provisions of the Missouri Constitution: (1) Article I, § 13; (2) Article III, § 23; and (3) Article XI, § 3.

II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a *981 genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III. Discussion

Plaintiffs seek a declaration that the Ordinance violates several provisions of the recently-enacted SB 369, codified at R.S.Mo. §§ 67.1830-67.1846. "[A] municipal corporation can enact no ordinance which violates the Constitution of [Missouri] or the United States, or which contravenes the statutes of [Missouri]." Pearson v. City of Washington, 439 S.W.2d 756, 760 (Mo. 1969). "A municipal ordinance must be in harmony with the general law of the state and is void if in conflict." Morrow v. City of Kansas City, 788 S.W.2d 278, 281 (Mo. 1990)(en banc). Thus, as a political subdivision of the State of Missouri, the City lacks the power to enact or enforce an ordinance that does not comply with SB 369. The fact that the Ordinance was passed prior to the enactment of SB 369 does not change this result. See Carson v. Oxenhandler, 334 S.W.2d 394, 397 (Mo.Ct.App. 1960)(holding that municipal ordinances in conflict with subsequent state statutes must yield to the state law). Therefore, if the Court finds that the Ordinance conflicts with SB 369, then the Ordinance must be declared invalid.
Plaintiffs first argue that the fees imposed by the Ordinance violate SB 369. SB 369 expressly limits the amounts a local government can collect from telecommunications companies who are using the public rights-of-way. Under SB 369, fees must be:
1) "[b]ased on actual, substantiated costs incurred by the political subdivision in managing the public rights-of-way";
2) "[b]ased on an allocation among all users of the public right-of-way, including the political subdivision itself," and reflective of a proportionate cost of each use;
3) "[i]mposed on a competitively neutral and nondiscriminatory basis"; and
4) "[i]mposed in a manner so that aboveground uses of the public right-of-way do not bear costs incurred by the political subdivision to regulate underground uses of the public rightof-way." R.S.Mo. § 67.1840.2.
Plaintiffs argue that § 4.7(1),(2) and § 4.5(3) of the Ordinance violate the aforementioned provisions of SB 369. Those sections state that plaintiffs must pay:
1) an "annual license fee" equal to the greater of "the per lineal foot fee established from time to time by the City in an annual fee schedule OR five per cent of [a telecommunications company's] gross revenues from the provision for hire of telecommunications services and facilities in the public rights-of-way"; where "gross revenues" is defined to include revenues derived "directly or indirectly" by the "Licensee, its affiliates, subsidiaries, *982 parent companies, Lessees, and from any person in whom the Licensee has a financial interest" from the provision of telecommunications services originating or terminating at any location in the City via the public right-of-way, § 4.7(1),(2); and
2) an "application fee" of an amount to be fixed by the City Administrator to apply for a "license" to use the public right-of-way, § 4.5(3).
Plaintiffs argue that the fees imposed by the Ordinance are not based on the City's actual, substantiated right-of-way management costs. There is some evidentiary support for plaintiffs' contentions. Specifically, the deposition testimony of Mark Levin and Stephen Rasmussen, as well as the City's supplemental response to SWBT's first set of interrogatories, show that the City has never conducted a study to determine the costs it incurs that relate to the managing of the public rights-of-way. SB 369 only authorizes a local government to recover its "actual, substantiated" management costs; thus, the City must produce some evidence to show that the fees it seeks are actual and substantiated. Plaintiffs have met their burden and have shown that the fees are not related to any cost-study or actual costs of the City in maintaining its rights-of-way. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." As plaintiffs state, "[defendant] has not been able to present even one piece of paper correlating the fees to the costs it incurs in managing telecommunications companies' use of its rights-of-way." Thus, defendant cannot meet its burden as a matter of law.
Furthermore, the Ordinance also violates the fee provisions of SB 369 in that it imposes unlawful gross receipts taxes and linear foot fees without a provision for a credit for amounts paid as business license taxes or gross receipts taxes. SB 369 prevents local governments from amending or enforcing existing ordinances that charge linear foot fees unless the right-of-way users are either entitled to a credit for amounts paid as business license taxes or gross receipts taxes, or exempted from the linear foot fee if they pay gross receipts tax. R.S.Mo. § 67,1846.1 (1),(2). The Ordinance specifically provides that payments made "shall be in addition to any and all taxes now or hereafter applicable to a franchisee or licensee by law." § 1.14(4); see also § 4.7(6)("A licensee may not offset in whole or in part the annual fee due under this ordinance by payments to the City in respect of gross receipts for telephone exchange service under Ordinance No. 87-302.").
The Ordinance further violates the fee provisions of SB 369 in that by expressly limiting local governments to recovery of their "actual, substantiated costs," R.S.Mo. § 67.1840.2(1), SB 369 specifically forbids local governments from imposing fees in the nature of "rent of the public right-of-way." Id.; see also R.S.Mo. § 67.1830(5)(f). The fees imposed by the Ordinance are predicated on the notion that the City should
receive fair and reasonable compensation for others' use of the property controlled and maintained by it, taking into account that the privilege to occupy portions of such public rights-of-way for limited times for the business of providing communications services is a valuable economic asset, without which, a provider would be required to invest substantial capital and incur substantial expense. § 1.1(2).
*983 The Ordinance also provides, in contravention of the clear language of R.S.Mo. § 67.1830(5)(f) that payments "shall not be in the nature of a tax, but rather as a rental." § 1.14(4). Thus, these provisions also violate SB 369.
For all of the aforementioned reasons, plaintiffs are entitled to a declaration that the fees the City seeks from telecommunications companies in the Ordinance are invalid under SB 369.
Plaintiffs next argue that the Ordinance violates SB 369 in that it imposes unreasonable requirements for entry to all users of the rights-of-way. See R.S.Mo. § 67.1842.1(3) ("no political subdivision shall create or erect any unreasonable requirement for entry to the public right-of-way by public right-of-way users"). Plaintiffs believe that the following provisions of the Ordinance are in violation of this provision of the statute, as the Ordinance requires all entrants to the right-of-way:
1) to permit Maryland Heights' employees to order telecommunications providers to remove facilities from the right-of-way at their own expense and to seize, remove, disable or destroy a provider's facilities in the right-of-way if the City believes that there has been a material violation of the Ordinance, § 1.12(4)(c);
2) to inquire into a telecommunications provider's technical, financial and legal qualifications to construct or operate a telecommunications system, § 4.5(6)(a);
3) to fill out a detailed application for a license by, inter alia, listing its qualifications to be a telecommunications provider, § 4.5(6)(a); and
4) to allow the City to co-locate its own proprietary facilities on a telecommunications provider's poles or conduits, § 4.6(1).
SB 369 holds that "no political subdivision shall require any conditions that are inconsistent with the rules and regulations of... the Federal Communications Commission." R.S.Mo. § 67.1832.1. Furthermore, SB 369 provides that local governments may impose various rights, duties and obligations on users of the rights-of-way "provided that such rights, duties and obligations [do] not conflict with any federal law or regulation." This Court has already held that the aforementioned provisions of the Ordinance are invalid under the Federal Telecommunications Act of 1996 ("FTA"), 47 U.S.C. § 253, as unreasonable barriers to entry. The federal agency charged with interpreting and administering the FTA is the Federal Communications Commission ("FCC"). As such, the aforementioned sections of the Ordinance are unreasonable barriers to entry under SB 369 as well, and must be declared invalid.
Plaintiffs next argue that § 1.10(1) of the Ordinance violates SB 369. Section 1.10(1) requires telecommunications companies to furnish the City maps showing the precise location of all existing facilities within the public right-of-way "in the form directed by the City Engineer." Although SB 369 allows a local government to require telecommunications companies to submit maps of their facilities, it expressly allows the companies to submit the maps "in the form maintained by the user." For this reason, § 1.10(1) of the Ordinance must be declared invalid.
Plaintiffs argue that § 1.18 of the Ordinance is invalid because it makes no exception for companies such as SWBT that are specifically exempted from attaining insurance coverage or construction bonds. SB 369 states that
a political subdivision may require construction performance bonds or insurance coverage or demonstration of self insurance at the option of the political subdivision or if the public utility right-of-way *984 user has twenty-five million dollars in net assets and does not have a history of permitting noncompliance within the political subdivision as defined by the political subdivision, then the public utility right-of-way user shall not be required to provide such bonds or insurance. R.S.Mo. § 67.1830.6(a).
The Ordinance requires all telecommunications companies to obtain a general commercial liability policy of insurance in the amount of $2 million with a $1 million umbrella policy. § 1.18. Because the Ordinance makes no exception to this provision, the Ordinance must be declared invalid.
Plaintiffs next argue that § 4.2 of the Ordinance must be declared invalid because SB 369 specifically prohibits municipalities from requiring telecommunications companies to enter into "franchise" agreements with the municipality. R.S.Mo. § 67.1842.1(4). Section 4.2 of the Ordinance specifically prohibits a telecommunications company from installing, constructing, emplacing, maintaining, repairing, replacing and/or operating any telecommunications facilities without first "entering into an agreement or lease" with the City. § 4.2(1). The statute does not define the term "franchise," yet it is at least arguable that "an agreement or lease" could be construed as a franchise within the meaning of the statute. However, the Court is reluctant to find that § 4.2(1) violates SB 369 because R.S.Mo. § 67.1846.1, states that
nothing in sections 67.1830 to 67.1846 shall prohibit a political subdivision or public utility right-of-way user from renewing or entering into a new or existing franchise as long as all other public utility right-of-way users have use of the public right-of-way on a nondiscriminatory basis.
Because this provision calls into question the applicability of R.S.Mo. § 67.1842.1(4), the Court cannot find that § 4.2(1) is in violation of SB 369. Furthermore, SB 369 does allow a local government to require a telecommunications company to obtain a right-of-way permit, in some circumstances. See, e.g., R.S.Mo. § 67.1832.2(1). The statute does not distinguish between a right-of-way permit and a franchise. Therefore, the Court cannot unequivocally state that § 4.2(1) of the Ordinance violates SB 369.
Plaintiffs next argue that § 4.5(6)(f) of the Ordinance violates SB 369 in that it vests the City with complete discretion to determine who may use the right-of-way. The Ordinance grants its City Administrator discretion to apply "factors as [he] may deem relevant" in reviewing applications for use of the right-of-way. § 4.5(6)(f). The only limitation on the City Administrator's discretion is that he may not consider the bankruptcy status of the application. Id. However, SB 369 limits the grounds under which a local government may deny a telecommunications company's use of the public rights-of-way. The statute states:
1. A political subdivision may deny an application for a right-of-way permit if:
(1) The public utility right-of-way user fails to provide all the necessary information requested by the political subdivision for managing the rights-of-way;
(2) The public utility right-of-way user has failed to return the public right-of-way to its previous condition under a previous permit;
(3) The political subdivision has provided the public utility right-of-way user with a reasonable, competitively neutral, and nondiscriminatory justification for requiring an alternative method for performing the work identified in the permit application *985 or a reasonable alternative route that will result in neither additional installation expense up to ten percent to the public utility right-of-way user nor a declination of service quality;
(4) The political subdivision determines that the denial is necessary to protect the public health and safety, provided that the authority of the political subdivision does not extend to those items under the jurisdiction of the public service commission, such denial shall not interfere with a public utility's right of eminent domain of private property, and such denials shall only be imposed on a competitively neutral and nondiscriminatory basis; or
(5) The area is environmentally sensitive as defined by state statute or federal law or is a historic district as defined by local ordinance. R.S.Mo. § 67.1836.1.
Because the Ordinance does not impose any of the foregoing limitations on the City Administrator's discretion to deny a right-of-way permit, it violates SB 369.
Defendant asks this Court to hold, as a matter of law, that SB 369 is unconstitutional under the Missouri State Constitution. The City makes three arguments in support of its assertion. First, the City argues that SB 369 makes an irrevocable grant of special privileges and is unconstitutionally retrospective in operation. In support of this argument, the City cites Article I, § 13 of the Missouri Constitution, which provides "that no ex post facto law nor law impairing the application of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." Defendant asserts that because the Ordinance was enacted first, SB 369 violates the restriction on retrospective laws. In making this argument, the City ignores the fact that it is a political subdivision of the State of Missouri, and its powers only exist at the pleasure of the State. Thus, if the State chooses to take away the City's governing authority in any area, it is free to do so at any time without the City's consent. See Missouri ex tel. Kemper v. The St. Louis, Kansas City, & Northern Railway Co., 9 Mo.App. 532, 1881 WL 175, *3 (1881) ("[I]t is competent to the Legislature to modify [municipal powers] at pleasure, or to take them wholly away."). Article I, § 13 of the Missouri Constitution, prohibiting the General Assembly from enacting laws that are retrospective in operation, simply has no application to laws relating to the powers of political subdivisions. Id. at *4 ("Provisions of this kind exist ... in the constitutions of all the States, and they are generally held to extend only to the prohibiting of legislation of a retrospective character which disturbs rights of a private nature."). Furthermore, as stated above, municipal ordinances in conflict with subsequent state statutes must yield to the state law. Carson, 334 S.W.2d at 397.
Defendant also argues that SB 369 violates Article I, § 13 because it makes an irrevocable grant of special privileges. A state statute is an invalid revocable grant of a special privilege if it grants "a right, power, franchise, immunity or privilege ... to, or invest[s] in, a person or class of persons to the exclusion of others and in derogation of common right." State ex inf. Chaney v. West Mo. Power Co., 313 Mo. 283, 281 S.W. 709, 713 (1926). Defendant has not identified the special privileges it believes SB 369 confers, nor has defendant persuasively argued why this Court should declare a Missouri statute unconstitutional. Furthermore, there is simply nothing in SB 369 to suggest that the limitations it places on municipal regulation of use of *986 the public rights-of-way by telecommunications companies is an irrevocable grant of special privileges. By its terms, SB 369 applies to all telecommunications companies using rights-of-way throughout the State of Missouri. It does not grant special privileges to either plaintiff, nor does it grant special privileges to other individual telecommunications companies doing business in Missouri.
Defendant next argues that SB 369 is unconstitutional under Article III, § 23 of the Missouri Constitution, which provides that "no bill shall contain more than one subject which shall be clearly expressed in its title ..." The purpose of Article III, § 23 is to defeat surprise within the legislative process. See Hammerschmidt v. Boone County, 877 S.W.2d 98, 101 (Mo. 1994)(en banc). As enacted by the Missouri General Assembly, SB 369 is entitled "An Act to amend Chapter 67, RSMo, by adding thereto nine new sections relating to utility access to public rights-of-way." The title sufficiently puts the City on notice that the statute impacts regulations that deal with municipal rights-of-way. As such, SB 369 does not violate Article III, § 23.
The City's final argument is that SB 369 is unconstitutional because, as interpreted by plaintiffs, it limits the exercise of the City's police power. See Article XI, § 3 of the Missouri Constitution. Defendant states, "According to Southwestern Bell's interpretation, Maryland Heights can in no way control a utilit[y's] use of Maryland Heights' rights-of-way." Plaintiffs are contesting the "onerous regulations and burdensome fees the City is seeking to impose in the Ordinance," but they have not contested the City's proper exercise of police power over the rights-of-way. As the Court noted in a previous opinion, the City's police powers are limited to the exercise of a government's right to "promote order, safety, health, morals and the general welfare of society, within constitutional limits," Marshall v. Kansas City, 355 S.W.2d 877, 883 (Mo. 1962)(en banc); police powers do not extend to the many regulations that the Ordinance seeks to impose on plaintiffs. In addition, by its express terms, SB 369 specifically retains for its political subdivisions the ability to assert their police powers over telecommunications companies making use of the public rights-of-way. R.S.Mo. § 67.1830.6 (authorizing political subdivisions to manage telecommunications companies' use of the public rights-of-way "through reasonable exercise of its police powers"). As such, the Court cannot hold that SB 369 violates Article XI, § 3 of the Missouri Constitution.
The Court now turns to the question of whether the entire Ordinance must be declared invalid. Plaintiffs argue that "the few non-challenged provisions of the Maryland Heights Ordinance are so interconnected with the challenged provisions that they cannot be severed from the challenged provisions." Thus, plaintiffs argue that the Court should invalidate the Ordinance in its entirety.
Severability is a matter of state law. Leavitt v. Jane L., 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Missouri courts have traditionally used section 1.140 R.S.MO. as the test for severability of an unconstitutional county ordinance provision. See Avanti Petroleum, Inc. v. St. Louis County, 974 S.W.2d 506, 512 (Mo.Ct.App.1998). Although the Court can find no case that has applied this statute to a municipal ordinance, the Court will do so at this juncture for lack of a better guideline.
The test, as enumerated in Avanti Petroleum, is:
The ordinance is valid, regardless of invalid provisions, unless the Court finds the valid provisions of the [ordinance] are so essentially and inseparably connected *987 with, and so dependent upon, the void provision that it cannot be presumed [the City] would have enacted the valid provisions without the void one; or unless the Court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent. Id.

The Court found above that several provisions of the City's Ordinance are invalid. The Ordinance is made up of forty-seven (47) pages of provisions, and Title IV is the only section that is entitled "Telecommunications Services." However, the title of that section is somewhat misleading, as there is no doubt that the entire Ordinance applies to the plaintiffs, as shown above by the Court's invalidation of several provisions that lie outside Title IV. There is further support for this belief as it appears that the legislative intent behind the drafting of the Ordinance was to provide the City with "fair and reasonable compensation" for other's use of the City's rights-of-way. This language practically mirrors the language of the Federal Telecommunications Act; thus, it is easy to surmise that the entire Ordinance applies to plaintiffs.
The Court notes at the outset that the Ordinance has a severability clause within § 1.21. However, the clause merely provides that if any section of the Ordinance is found to be unconstitutional or unlawful, then the remainder of the Ordinance should be construed in a way that will effect the City's purpose. As stated above, the City's purpose was to allow the City to recoup "fair and reasonable compensation" for other's use of the rights-of-way. Because the ultimate goal of the Ordinance was to provide reasonable compensation, it is doubtful that the City would find much use for an Ordinance after the Court has decided that the compensation provision within the Ordinance is not fair and reasonable. Furthermore, because the invalidated sections contain a mix of application procedures, approval requirements, financial and operations disclosures, and discretionary clauses, the Court finds that the valid provisions of the Ordinance, standing alone, are incomplete and incapable of being executed against telecommunications providers in accordance with the legislative intent. As such, the Court will invalidate the Ordinance in its entirety.
Accordingly,
IT IS HEREBY ORDERED that the motion of plaintiff Southwestern Bell Telephone Company for summary judgment as to Count III of the complaint [# 134] is granted.
IT IS FURTHER ORDERED that the motion of plaintiff XO Missouri Inc. for summary judgment as to Count II of the complaint [# 132-2] is granted.
IT IS FURTHER ORDERED that defendant's motion for summary judgment as to Count III of Southwestern Bell Telephone Company's complaint [# 131-2] is denied.