**MISSOURI UTILITIES COMPANY, a Corporation, Appellant,**

v.

**SCOTT–NEW MADRID–MISSISSIPPI ELECTRIC COOPERATIVE, Respondent.**

No. 56088.

Supreme Court of Missouri, En Banc.

Dec. 13, 1971.

Rehearing Denied Jan. 10, 1972.

**26**

Jack L. Oliver, Oliver, Oliver & Jones, Cape Girardeau, for appellant, Missouri Utilities Co.

James D. Sickal, Blanton, Blanton & Rice, Sikeston, for respondent, Scott-New Madrid-Mississippi Electric Cooperative.

BARDGETT, Judge.

This case involves a determination of the right of a rural electric cooperative operating pursuant to Chap. 394, RSMo 1969, V.A.M.S.,[1] to continue its operations within the boundaries of a municipality of less than 1500 people in an instance where the area incorporated was, prior to incorporation, served by the cooperative and by a private electric utility corporation operating pursuant to Chap. 393, and where subsequent to incorporation the utility obtained a nonexclusive franchise from the municipality but the cooperative did not obtain such a franchise.

The litigation originated on September 30, 1968, when Missouri Utilities Company, plaintiff-appellant (hereafter Utility), sued Scott-New Madrid-Mississippi Electric Co-operative, defendant-respondent (hereafter Co-op), seeking an order "permanently enjoining and restraining the defendant from extending its existing electric power lines to the construction site of the Ramada Inn within the corporate limits of the Village of Miner, Scott County, Missouri, for the purpose of rendering electrical service to said Mid-America Motels, Inc., at the site of its Ramada Inn Motel within the corporate limits of the Village of Miner, Scott County, Missouri, and permanently enjoining and restraining defendant, its agents, servants and employees from interfering with plaintiff's business and property rights within the corporate limits of . . . Miner . . . by solicitation of customers therein, and for such other and further relief as may be meet and just."

The circuit court issued its temporary restraining order against Co-op. Thereafter the parties stipulated to the facts, a hearing was had at the conclusion of which the circuit court found against plaintiff Utility and in favor of defendant Co-op; dissolved the temporary restraining order; awarded defendant Co-op $2,000 damages on its counterclaim and dismissed Utility's petition. Utility appealed to this court and Division Two held that this court did not have jurisdiction and transferred the appeal to the Springfield Court of Appeals. Missouri Utilities Co. v. Scott-New Madrid-Mississippi Elec. Co-op., Mo., 450 S. W.2d 182. The Springfield Court of Appeals affirmed the judgment of the circuit court and indicated in its opinion that it would be inclined to view favorably a motion for transfer to the Supreme Court because of the general interest and importance of the questions involved in the case. Utility filed such a motion which was sustained by the Springfield Court of Appeals and the cause was transferred here. We have jurisdiction. Const. of Mo., V.A.M. S., Art. V, § 10.

The Village of Miner is not a party to this litigation. The facts were stipulated to by the parties. They reflect the following:

Utility is a privately owned public utility deriving its power as a utility from Chap.

---

1. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise indicated.

393 and is subject to regulation by the Missouri Public Service Commission (hereafter P.S.C.).

Co-op is a rural electric cooperative operating under and deriving its power from Chap. 394.

The Village of Miner was incorporated as a village pursuant to Chap. 80 on August 20, 1951, by the County Court of Scott County, Missouri, and has a population of less than 1500.[2]

Utility's predecessor in 1912, and Co-op in 1938, obtained permission from the County Court of Scott County to utilize the public roads of Scott County to erect poles, etc., to transmit and distribute electric power in Scott County.

Prior to the incorporation of Miner in 1951, both parties were lawfully serving electric customers in the area subsequently incorporated.

In 1961 Utility was granted an electric franchise by Miner. In April 1962 and June 1962 Co-op was refused an electric franchise by Miner.

The stipulation of facts filed by the parties, October 21, 1968, recites that Utility is serving 228 electric customers and Co-op is serving 22 electric customers in Miner.

The event that precipitated this litigation occurred on September 23, 1968, when Co-op contracted with Mid-America Motels, Inc., to provide temporary electric service to the construction site of a Ramada Inn, then under construction, within the corporate limits of Miner; furnished such service to the Ramada Inn; and threatened to furnish permanent electric services to the Inn.

The trial court made findings of fact and conclusions of law. Its findings of fact are not in dispute on this appeal.

The conclusions of law entered by the trial court and pertinent to this appeal are as follows:

"1. Plaintiff is a private utility company governed by Chapter 393 RSMo 1959, V.A.M.S., and by virtue of said statutes, plaintiff is without authority to operate or provide electric service to customers within the corporate limits of the Village of Miner without the proper consent of said Village.

"2. Plaintiff's franchise, granted by the Village of Miner on May 9, 1961, is a non-exclusive franchise granting it the right to operate and provide electric service to customers in Miner, and by reason of said non-exclusive franchise, plaintiff has the right to restrain and enjoin a competitive supplier of electricity who is supplying service to customers within the Village of Miner, unlawfully and without authority.

"3. Defendant is an electric cooperative organized, existing and operating under and by authority of Chapter 394 RSMo 1959, V.A.M.S.; that as an electric cooperative, defendant has the right and authority, by virtue of said Section 394.080, to operate and provide electric service to its members in rural areas throughout the State of Missouri.

"4. Defendant's right to operate in rural areas, including incorporated villages with a population of 1,500 or less, is by reason of legislative grant and the consent of said incorporated village of 1,500 or less, is not required.

"5. Defendant, as an electric cooperative, is granted the right by Section 394.080 to operate and extend its operations to new members within an incorporated village until such time as said village reaches a population in excess of 1,500 and thereby ceases to be rural; that upon this event defendant has the right to continue its then existing operations until such time as its

2. The population of Miner in 1960 was 548 and in 1970 it was 640. Official Manual, State of Missouri 1971–1972, Table 4, p. 1433.

facilities may be purchased as provided for in Section 394.080(4).

"6. By reason of said statutory grant, the defendant is presently operating lawfully and with authority within the corporate limits of the Village of Miner, and as a result thereof, the plaintiff, as the holder of a non-exclusive franchise is not entitled to prohibit defendant's operation or the contemplated extension of its operation to the Ramada Inn."

On this appeal Utility contends the trial court erred in its conclusions of law—numbers 4, 5, and 6, supra, and in failing to declare that Co-op was equitably estopped to assert the existence of prior rights or to deny the existence of Utility's franchise rights.

The principal and controlling issue is whether or not a rural electric cooperative operating under Chap. 394 is required to obtain the consent of a municipality with a population under 1500 in order to serve its members and customers therein.

■ The holder of a nonexclusive franchise is entitled to injunctive protection against competitors acting "unlawfully and without authority", City of Campbell v. Ark.–Mo. Power Co., 8 Cir., 55 F.2d 560; Mo. Pub. Service Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, 3 [1]; Ark.–Mo. Power Corp. v. City of Kennett, 8 Cir., 113 F.2d 595, 596 [1]. In order for the complainant to be entitled to injunctive protection however, the activities of the competitor must be unlawful. If the activities of Co-op in Miner are lawful, then Utility is not entitled to injunctive relief. Ark.–Mo. Power Co. v. City of Kennett, 8 Cir., 78 F.2d 911, 914 [3].

Co-op is a rural electric cooperative organized and operating pursuant to Chap. 394. Section 394.080 entitled "Powers of cooperative" provides, in part, that a cooperative shall have power:

"(4) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per cent of the number of its members . . . ."

"(7) To construct, purchase, take, receive, lease as lessee, or otherwise acquire, and to own, hold, use, equip, maintain, and *operate*, . . . ." (Emphasis ours.)

"(10) To construct, maintain and *operate* electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect of the *use* of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating electric transmission and distribution lines or systems". (Emphasis ours.)

"Rural area" is defined in § 394.020(1) as being "any area of the United States not included within the boundaries of any city, town or village having a population in excess of fifteen hundred inhabitants, and such term shall be deemed to include both the farm and nonfarm population thereof".

Utility suggests that upon the incorporation of Miner the area within the boundaries of Miner ceased to be a "rural area" as that term is defined supra. In State ex rel. Consumers Public Service Co. v. Public Service Commission, Banc, 352 Mo. 905, 180 S.W.2d 40, an order of the P.S.C., whereby the P.S.C. authorized certain utility companies to sell their electrical properties to an electrical cooperative, was challenged by a number of utility companies. At least one of the communities that would, under the sale, be thereafter served by the cooperative was the incorporated town of Mercer. The appellants-utilities challenging the P.S.C. sale order contended, inter alia, that subsection (a) of § 5415, RSMo 1939, was unconstitutional as broader than

the title of the Rural Electric Cooperative Law. (Laws of Mo.1939, p. 298.) Section 5415(a), RSMo 1939, was the definition of "Rural area" and has been carried forward to the present without change and is now § 394.020(1) as set forth supra. Appellants-utilities contended that there was no provision in the title to the act which would indicate that rural areas were to include towns and villages, urban areas, not in excess of fifteen hundred inhabitants and no provision in the title that cooperatives were authorized to furnish electricity in towns and villages of less than fifteen hundred inhabitants.

Although the court was not called upon in State ex rel. Consumers Public Service Co., supra, to interpret with particularity the detailed meaning of § 5415(a) [§ 394.-020(1)·]—Rural area—it is apparent that the court was cognizant of this definition. The court said, loc. cit. 42, "None of the villages or towns now served by the Seller have a population of more than 1500." The only significance the population figure of "1500" bore to the case was in connection with the definition of rural area. As to this the court said "The term 'rural area' has no such definite and certain legal meaning as to be clear without definition, and the definition made is not unreasonable." Loc. cit. 48.

Additionally we note that in 1940, the year following enactment of the Rural Electric Cooperative Act in Missouri, there were 793 incorporated places in this state, of which 545 had a population less than 1500. Only 148 municipalities had a population over 1500. (Official Manual, State of Missouri, 1941–1942, Table 5, pp. 1051–1056.) It would be wholly unwarranted to ascribe an intent to the legislature to have prohibited people in approximately 70 percent of the municipalities, which were generally scattered all over rural Missouri, from receiving the benefits of the Federal Rural Electrification Act of 1936 (Title 7, Chap. 31, U.S.C.A.) by excluding such municipalities, by definition, from being a "rural area", and to thereby withhold power from an electric cooperative from serving them. To the contrary, we believe that the legislature fully intended that electric cooperatives be empowered to serve the people in municipalities under 1500 population.

■ We hold that a municipality not in excess of 1500 population is, by reason of the provisions of § 394.020(1), a "rural area" and that an electric cooperative is authorized to exercise the powers granted to it by § 394.080 within such a municipality.

The next issue is whether the consent of a municipality with a population not in excess of 1500 is a necessary prerequisite to the Co-op's right to exercise the powers granted to it by Chap. 394 within such a municipality.

In State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 397 [1–3], this court held that no person can acquire a right to make a special or exceptional use of a public highway except by grant from the sovereign power; that this power resides in the state, and a city, in granting a franchise, acts as agent for the state; that § 4962, RSMo 1929 [now § 393.010] and § 7683, RSMo 1929 [now § 71.520] constituted a delegation of power by the state to a municipality to grant or refuse permission to electrical companies to place appliances in public ways within the municipality and that the requirement of municipal consent as to electric corporations is wholly statutory.

■ It would seem axiomatic that the state can exercise its sovereign power to grant the right to operate within corporate limits directly and without requiring municipal consent if it chooses to do so.

The statutes bearing on the question at hand are § 394.080—Power of cooperative —§ 393.010—Corporations supplying gas, electricity or water—powers—§ 393.170— Approval of incorporation and franchises— certificate—and § 71.520—relating to all cities and towns—Certain privileges granted

to public utilities; and the resolution of the issue requires us to determine the effect, each upon the others, of these laws.

Section 394.080 provides, in part, that a rural electric co-operative shall have power:

"(4) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members . . . and to other persons not in excess of ten per cent of the number of its members . . . ;

"(7) To construct, purchase . . . and to own, hold, use, equip, maintain, and operate . . . electric transmission and distribution lines or systems . . . which shall be deemed necessary, convenient or appropriate to accomplish the purpose for which the co-operative is organized;

"(10) To construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect of the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating electric transmission and distribution lines or systems . . . ."

Section 393.010 sets forth the powers of gas, electric and water companies (utilities) and provides in part:

"Any corporation formed or subject to Chapter 351 . . . shall have full power to manufacture and sell and to furnish such quantities of . . electricity . . as may be required by the city, town or village . . . and such corporations shall have the power to lay conductors for conveying . . electricity . . through the streets, alleys and squares of any city, town or village *with the consent* of the munici-

pal authorities thereof *under such reasonable regulations* as such authorities may prescribe, and such companies are authorized to set their poles . . . wires . . along, across or under any of the public roads, streets and waters of this state in such manner as not to incommode the public in the use of such roads, streets and waters." (Emphasis ours.)

Section 393.170 pertains to the regulation of utility companies by the P.S.C. and provides in part:

"1. No . . . electric corporation . . . shall begin construction of a . . electric plant . . . without first having obtained the permission and approval of the commission.

"2. No such corporation shall exercise any right or privilege under any franchise hereafter granted . . . without first having obtained the permission and approval of the commission. Before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the commission, together with a verified statement of the president and secretary of the corporation, showing that it has received the required consent of the proper municipal authorities."

Section 71.520 relating to the authority of all cities and towns to, by ordinance, grant an electric franchise provides:

"Any city, town or village in this state may by ordinance authorize any person, or any company organized for the purpose of supplying light, heat, power, water, gas or sewage-disposal facilities, and incorporated under the laws of this state, to set and maintain its poles, piers, abutments, wires and other fixtures, and to excavate for, install, and maintain water mains, sewage-disposal lines, and necessary equipment for the operation and maintenance of electric light plants, heating plants, power plants, waterworks plants, gas plants and sewage-disposal plants, and to maintain and operate the same along, across or under any of the

public roads, streets, alleys, or public places within such city, town, or village, for a period of twenty years or less, subject to such rules, regulations and conditions as shall be expressed in such ordinance."

In Holland Realty & Power Co. v. City of St. Louis, 282 Mo. 180, 221 S.W. 51, the court construed § 3367, RS 1909 [now § 393.010] relating to the powers of electric companies, and § 9947, RS 1909 [now § 71.-520] relating to municipal authority to franchise electric companies. The court recognized the distinction between vesting municipalities with authority to grant or refuse to grant a franchise and the lesser authority to regulate the use of its streets. The court stated, loc. cit. 54:

"The two sections are cognate and should be construed together to ascertain what measure of power, to control the use of these public ways by electric corporations, the Legislature intended to vest in municipalities; a material inquiry in one view of this case, for if the authority of the defendant city went no further than to regulate the mode of use of its streets and alleys by such companies, and fell short of the power to refuse to grant the privilege on any terms, much could be said against the right of the city to remove plaintiff's wires, if plaintiff has been willing to accept a permit from the city and submit to its rules.

"In our opinion the language of both sections excludes any other meaning than that the municipal authorities of the state are vested with the prerogative to grant or refuse permission, in their discretion, to an electrical company to place their appliances in the public ways, either above or below ground; and this is particularly true of the section relating exclusively to that kind of corporation. Had the Legislature thought the wiser course would be to reserve the power to grant directly to such corporations the franchise to use streets, and restrict municipal control over the companies to an exercise of the police power, it could have done so—can yet at any time. But

instead, the power to grant or refuse, as well as to regulate, the use of the streets, was delegated to the municipal authorities. The words, 'may, by ordinance, authorize any company,' etc., in section 9947, lodge with the municipal assembly the duty and the right to determine whether or not to grant permission, while the words, 'subject to such rules, regulations and conditions, as shall be expressed in said ordinance,' confer on the assembly or council the power to impose terms in making a grant. And these words in section 3367, 'and such corporations shall have the power to lay conductors * * * with the consent of the municipal authorities thereof, and make such reasonable regulations as said authorities may prescribe,' subject the right of the company to place appliances in the streets to the will of the legislative department of the city. This is the effect universally ascribed, we believe, to statutes relating to public utility corporations, if the franchise to place their appliances in public ways, instead of being directly granted in their charters (whether the charters be special acts or a general statute for incorporating companies), is left to the decision of the municipal legislative bodies. [citing authorities.]"

In State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities, supra, 53 S.W.2d loc. cit., 397, this court again relied upon the combination of § 4962 and § 7683, RSMo 1929 [now § 393.010 and § 71.520, respectively] in holding that a municipality may, under delegated power from the state, grant or refuse to grant permission to electrical companies to place appliances in public ways within their corporate limits, citing Seventh Street Realty & Power Co. (Holland Realty & Power Co) v. City of St. Louis, supra.

Section 393.010, supra, sets forth the powers of the electric corporation and prohibits the exercise of the powers therein conferred unless the corporation first obtains municipal consent—a franchise—and also subjects the electric corporation to municipal regulation as the municipality

may prescribe for the use of its streets. Complementary to this the legislature provided in § 71.520, supra, that the municipality may, by ordinance, grant the requisite consent (franchise) to an electric corporation and also make regulations as to the use by the corporation of the municipal streets, etc.

Bearing in mind the distinction enunciated in Holland Realty & Power Co., supra, reference authority to grant or refuse a franchise as opposed to regulating the use of its streets, we now consider Chap. 394—Rural Electric Cooperatives—and particularly § 394.080.

By § 394.080(4), the legislature granted certain powers to the Co-op and at the same time and by the same words imposed certain restrictions as to customers and territory. This section authorizes and restricts the Co-op's activities to "rural areas", thus limiting the territory within which it has authority to sell electric energy. The Co-op does not, even within its authorized territory, have the right to sell energy to the public at large. It is restricted to selling electricity to its members and certain other customers.

Section 394.080(10) is the provision in the Rural Electric Cooperative Act that is comparable to § 393.010 which specifies the powers of electric utility companies. Section 393.010 specifically requires the utility company to obtain the consent of the municipality before it can operate within municipal boundaries. Section 394.080(10) makes no such requirement of an electrical Co-op. To the contrary, it directly empowers a Co-op to *operate* its distribution lines along all public thoroughfares, "including without limitation, all roads, highways, streets," etc., and all publicly owned lands. There is no mention of any requirement of municipal consent. Had § 394.080 (10) merely omitted reference to municipal consent, it could be argued that § 71.520 complemented § 394.080(10) and the right of a municipality to refuse permission to a Co-op still existed. However, § 394.080

(10) goes further and specifically provides that the Co-op remains subject to the requirements "in respect of the *use* of public thoroughfares" that are imposed by the authorities having jurisdiction thereof upon utilities. (Emphasis ours.)

█ Thus it appears that the legislature did precisely what the court in Holland Realty & Power Co., supra, was speaking of when it recognized that the legislature could reserve the power to grant directly to a corporation the franchise to use streets and restrict municipal control over the companies to an exercise of its police power. The legislative power to grant the right to use public streets can be exercised by the enactment of general statutes for incorporating companies. Holland Realty & Power Co., supra, 221 S.W. loc. cit. 54. If the legislature intended to require electric Co-ops to obtain municipal consent, it could have so provided, as it did with respect to electric utilities in § 393.010 and § 393.170 (2).

█ We hold that by § 394.080(4), (10), the legislature granted to rural electric Co-ops a franchise to operate in rural areas and that the exercise of the right to operate is not subject to the consent of the municipality. In the use of the streets of Miner, the Co-op is subject to the same requirements that are imposed by Miner upon an electric utility company. Section 394.-080(10); Missouri Public Service Co. v. Platte-Clay Elec. Coop., Mo., 407 S.W.2d 883, 893 [16].

█ Until the population of Miner exceeds 1500, it remains a rural area. So long as Miner remains a rural area, Co-op has the right to exercise all of the powers and rights conferred by Chap. 394 on rural electric cooperatives. When Miner's population exceeds 1500, Co-op's powers will then be curtailed and thereafter Co-op will have the right to continue its then existing operations until such time as its facilities are purchased. Section 394.080(4); Missouri Public Service Co. v. Platte-Clay Elec. Coop., supra.

State on inf. Jones ex rel. City of St. Louis v. Light & Development Co. of St. Louis, 246 Mo. 618, 152 S.W. 67, cited by Utility does not conflict with our decision in the instant case but rather supports it. In the cited case the court recognized that insofar as the city's grant of the mere right to use the streets is concerned, the city is exercising by delegation a power which resides in the state. The court recognized that this power could be exercised directly by the state when, in speaking of State ex rel. Nat'l Subway Co. v. City of St. Louis, 145 Mo. 551, 46 S.W. 981, it said, "In the Subway Case it was held that the Subway Company, having been organized under the provisions of the general statutes relating to telegraph and telephone companies, derived its right to the use of the streets directly from the state by virtue of section 2721, R.S. 1889 (now section 3326, R.S. 1909), and that the city, in contracting with the company by ordinance as to the manner and place of installation, was exercising its proprietory rights. The right to use the streets of the city—that is, the franchise—was not involved. That was derived directly from the state, and not through the city as agent for the state." 152 S.W. loc. cit. 74.

Our holding is consistent with Light & Development Co. of St. Louis, supra, in that here, as in the Subway case, the legislature has granted the right to use the streets—the franchise—directly to the rural electric Co-op by virtue of § 394.080(4), (10).

State ex inf. Shartel ex rel. City of Sikeston v. Missouri Util. Co., supra, and State ex rel. Public Water Supply Dist. No. 2 of Jackson Co. v. Burton, Mo., 379 S.W. 2d 593, 599, do not aid Utility. Both cases concerned regulated utilities subject to P.S.C. jurisdiction. An electrical cooperative is not subject to P.S.C. jurisdiction except to the limited extent set forth in § 394.160. Of some significance, however, is the fact that the legislature specifically required a regulated utility to obtain municipal consent as a prerequisite to receiving a certificate of convenience and necessity from the P.S.C. by § 393.170(2), but exempted an electric cooperative from P.S.C. jurisdiction.

Thus it appears that all of the interrelated legislative enactments relating to electric utilities continually speak of municipal consent. By contrast, Chap. 394—Rural Electric Cooperatives—makes no such requirement, but does specifically preserve in existence the power of a municipality to subject a cooperative to the same requirements as to the use of the streets as the municipality subjects the regulated utility to.

In support of Utility's position that it is entitled to an injunction against extension of new service by Co-op within Miner, Utility cites Missouri Pub. Serv. Co. v. Platte-Clay Electric Coop., supra; Town of Gans v. Cookson Hills Elec. Coop, Inc., Okl., 288 P.2d 707; Gulf States Utilities Co. v. Dixie Elec. Membership Corp., La. App., 185 So.2d 313, and Montana Power Co. v. Park Electric Co-operative, 140 Mont. 293, 371 P.2d 1.

Platte-Clay Elec. Coop., supra, is not applicable because Miner is still a "rural area" and the Co-op's powers are not curtailed until the area becomes nonrural.

In Town of Gans v. Cookson Hills Elec. Coop, supra, plaintiff municipality sought an injunction against defendant cooperative requiring it to remove all of its electrical facilities within Gans on the grounds that the cooperative had not obtained a franchise from Gans. The lower court refused to order discontinuance of use by the cooperative of such portions of Gans as were in use prior to reincorporation of Gans. The cooperative did not appeal. The municipality appealed and the Supreme Court of Oklahoma affirmed, holding that the cooperative had received permission from the Board of County Commissioners to use the roads of the county prior to the reincorporation of Gans and, to the extent such use was utilized as of the date of reincorporation of Gans, the cooperative could

continue its activities within Gans without obtaining a franchise from Gans. The question of whether the cooperative had the right to continue to serve all of Gans was not an issue on appeal and was not adjudicated.

Montana Power Co. v. Park Electric Co-operative, supra, involved the application of the Montana Rural Electric Co-operative Act, R.C.M.1947, § 14–502, which set up the purpose of the act. It provided that a cooperative could supply electric energy "in rural areas, *in which electrical current and service is not otherwise available, from existing facilities and plants* . . .." (Emphasis ours.) The court held that the emphasized portion of the statute restricted the power of the cooperatives. No such language appears in the statutes of Missouri.

In Gulf States Utilities Co. v. Dixie Elec. Membership Corp., supra, plaintiff utility sought an injunction against defendant electric cooperative to prohibit it from further construction of an electric distribution line within the City of Baker on the ground that the cooperative had not secured a franchise from the City of Baker and on the ground that the cooperative's poles and lines were so close to the plaintiff's lines as to constitute an extreme hazard. The court held that plaintiff utility, as the holder of a nonexclusive franchise, was entitled to maintain the action against one who did not hold a franchise. The court followed the earlier case of Town of Coushatta v. Valley Electric Membership Corp., La.App., 2d Cir., 139 So.2d 822, also cited by appellant, in which the court enjoined Valley Electric from rendering service to a customer acquired after the area in which the customer lived was annexed by the Town of Coushatta on the grounds that Valley Electric had not obtained a franchise from the Town of Coushatta.

Gulf States Utilities Co., supra, and Town of Coushatta, supra, present factual situations similar to the case at bar. The difference in outcome results from the difference in the statutes of the two states. The Louisiana Electric Cooperative Law, R.S. 12:401 et seq. (L.S.A. 12:401 et seq.) does not define "rural area" nor restrict the power of a cooperative to act only within any defined area. In short, the Louisiana law does not directly franchise a cooperative to operate within a defined area. The Missouri statute, § 394.080(4), (10), directly grants a franchise to an electric cooperative to operate within a rural area, as defined in § 394.020(1), subject only to such requirements as to use of the thoroughfare as are imposed on utilities by the municipality.

L.S.A. 12:403(11) which enumerates the power of an electrical cooperative is similar to § 394.080(10) in many respects. However, where § 394.080(10) makes cooperatives subject to the requirements in respect to the use of thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating electric transmission and distribution systems, the Louisiana Act subjects cooperatives "to the requirements in respect to the use of such thoroughfares and lands *that are imposed by law*." (Emphasis ours.) In this respect the Louisiana Act is substantially broader than the Missouri Act, and it could be argued that the broader terminology of the Louisiana Act would incorporate within its terms all laws relating to the right to use as well as the mode of use of public streets and thereby bring within its scope the provision of statutes delegating authority to franchise electric companies to municipalities, such as § 71.520. Our statute, § 394.-080(10), is restrictive in its terms and limits the power of respective authorities having jurisdiction over such thoroughfares to the imposition of requirements as to the mode of use upon cooperatives that such authorities impose upon electric utilities.

The Louisiana court made no distinction between a utility company and a cooperative insofar as the requirement of municipal consent is concerned. It is our view that the Missouri legislature did make a sub-

stantial distinction, as set forth supra, with respect to the necessity of municipal consent.

Tampa Elec. Co. v. Withlacoochee River Elec. Co-op., Fla., 122 So.2d 471, was an action by a private utility to enjoin the cooperative from furnishing service to one already being adequately served by a private utility. Florida law, F.S.A. § 425.04 (4) prohibits a cooperative from furnishing service to one being adequately served by a private corporation, utility agency, or a municipally owned electrical service. No such restriction appears in the Missouri statutes.

Utility contends that Co-op is estopped to assert that it possessed the right to render electric service within Miner because Co-op actively sought a municipal franchise from Miner. Co-op answers by saying that there is no evidence that Utility in any way relied upon or had been damaged by Co-op's action in seeking a franchise from Miner.

The record is wholly devoid of any evidence of reliance by or damage to Utility by reason of the efforts of Co-op to obtain a municipal franchise. Additionally, however, the point is without merit for the reason that Co-op was not required to obtain a franchise from Miner and Co-op has the right to continue its operations within Miner by reason of the legislative grant of authority as set forth supra.

We have considered the other authorities cited by Utility and find them not to be persuasive on the points raised by this appeal. The conclusions of law made by the trial court are correct. The judgment is affirmed.

SEILER, MORGAN and HOLMAN, JJ., and SHANGLER, Special Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

FINCH, C. J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

HENLEY, J., not sitting.

DONNELLY, Judge (dissenting).

I recognize, of course, that the Rural Electrification Act of 1936 has been of much benefit to rural America. However, I cannot concur in a statutory construction which permits a rural electric cooperative to force its way into an *incorporated* area where *the people* may *legally* say that the rural electric cooperative is not needed or wanted.

Section 71.520, V.A.M.S., provides: "Any city, town or village in this state may by ordinance, authorize any person, or any company organized for the purpose of supplying light, heat, power, water, gas or sewage-disposal facilities, and incorporated under the laws of this state, to set and maintain its poles, piers, abutments, wires and other fixtures, and to excavate for, install, and maintain water mains, sewage-disposal lines, and necessary equipment for the operation and maintenance of electric light plants, heating plants, power plants, waterworks plants, gas plants and sewage-disposal plants, and to maintain and operate the same along, across or under any of the public roads, streets, alleys, or public places within such city, town, or village, for a period of twenty years or less, subject to such rules, regulations and conditions as shall be expressed in such ordinance."

I believe we should apply a rule of statutory construction which "proceeds upon the supposition * * * [that V.A.M.S. §§ 394.080 and 71.520] were governed by one spirit and policy and were intended to be consistent and harmonious in their several parts and provisions * * *." State ex rel. Cairo Bridge Commission v. Mitchell, 352 Mo. 1136, 1143, 181 S.W.2d 496, 499.

I would follow said rule of construction and would conclude that the General As-

sembly intended that a rural electric cooperative operating under Chapter 394 may give service in rural areas (including cities, towns or villages having a population of fifteen hundred inhabitants or less), *but* that it must obtain the consent of any city, town or village involved.

I respectfully dissent.