STATE of Missouri ex rel. UNION ELECTRIC COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION OF the STATE OF MISSOURI, Respondent.

No. WD 41154.

Missouri Court of Appeals, Western District.

March 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied June 13, 1989.

Katherine C. Swaller, St. Louis, for appellant.

William K. Haas, Jefferson City, for respondent.

Rodric A. Widger, Jefferson City, for intervenor-respondent.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

This is an appeal by Union Electric Company (Union Electric) from a final order of the Public Service Commission (Commission) in Case No. EC–87–71 which was affirmed by the Cole County Circuit Court, Judge Lawrence O. Davis, Special Judge. In its Report and Order, the Commission ordered Union Electric to cease and desist service to a state-owned traffic control signal from Union Electric's existing electric line. The Commission determined that Cuivre River Electric Service Company (CRESCO), complainant below, was the proper party to serve the signal. We affirm.

This case was submitted to the Commission on an agreed stipulation of facts. The pertinent facts to this appeal are as follows. In 1952, St. Charles County granted Union Electric a perpetual franchise. In 1956, the Commission granted Union Electric a certificate of convenience and necessity to construct a line adjacent to U.S. Highway 40/61 in St. Charles County. When the Commission issued this order, the area was not within the boundaries of any incorporated municipalities. In 1975, the City of Lake Saint Louis was incorporated. In 1985, the City of Lake Saint Louis granted CRESCO a municipal franchise.

In 1986, the Commission granted CRESCO a certificate of convenience and necessity for the area of the City of Lake Saint Louis. The corporate limits of this City include the intersection of U.S. Highway 40/61 and Prospect Road. In 1986, the Missouri Highway Department asked Union Electric to service an electric traffic control signal located one hundred forty (140) feet from Union Electric's certified line adjacent to Highway 40/61. Union Electric maintains electric transmission and distribution lines along Highway 40/61 pursuant to a line certification granted to Missouri Edison Company in Case No. 12,485 and as modified in Case No. 13,170. In December 1986, CRESCO filed the underlying complaint before the Commission. In September 1987, the Commission ordered Union Electric to cease and desist service to the signal. The Commission subsequently denied Union Electric's request for a rehearing.

On review, this Court is to determine whether the Public Service Commission's Report and Order was lawful and, if so, whether it was reasonable. *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission (UCCM)*, 585 S.W.2d 41, 47 (Mo. banc 1979). The lawfulness of the Commission Order depends on whether there exists statutory authority for its issuance. *State ex rel. Gulf Transport Company v. Public Service Commission*, 658 S.W.2d 448, 452 (Mo.App.1983). As to matters of reasonableness, the courts cannot substitute their judgment for that of the Public Service Commission if the Commission's decision is supported by substantial and competent evidence on the record as a whole. *UCCM*, 585 S.W.2d at 47 (citing *State ex rel. National Trailer Convoy, Inc. v. Public Service Commission*, 488 S.W.2d 942, 944 (Mo. App.1972)). A decision or Order of the Commission can be set aside only when it is clearly contrary to the overwhelming weight of the evidence. *State ex rel. Egan v. Public Service Commission*, 319 S.W.2d 917, 919 (Mo.App.1959). A Public Service Commission Order is presumed valid and the burden is on the party attacking it to prove its invalidity and/or abuse of Commission discretion. *UCCM*, 585 S.W.2d at 47.

Union Electric states that the sole issue on appeal involves priority of rights pursuant to certificates of convenience and ne-

cessity. Two types of certificate authority are contemplated in Missouri statutes. Section 393.170.1, RSMo 1986 sets out the requirement for authority to construct electrical plants. This is commonly referred to as a line certificate and is what Union Electric held in the instant case. Subsection 2 sets out the requirement for authority to serve a territory which is known as an area certificate. § 393.170.2, RSMo 1986. This is the type of authority held by CRESCO and which typically has been the principal vehicle for saturating a geographically defined area with retail electric service. In years past it was not uncommon for a utility like Union Electric to service communities by area certificate authority while holding line certificate authority to build transmission lines connecting those towns like a series of pockets of retail service.

Retail service extensions from certified lines developed over time as a sensible accommodation which served the utilities interest in plant efficiency while also serving the Commission interest in avoidance of line duplication. The Commission acknowledges in Case No. 12,485 that this particular line was to constitute the backbone of Missouri Edison Company transmission system which at 69,000 volts would be able to serve, for emergency and standby purposes, the northern part of its properties as far as Louisiana from its interconnection with Union Electric Company.

Without discussion, the Commission there allowed Missouri Edison (Union Electric's predecessor in interest) to underbuild the high voltage transmission line with lower voltage lines from which individual services could be run without the benefit of a high voltage substation. There is nothing to suggest that the underbuild was more than ancillary to the primary goal of moving electricity at high voltage over a substantial distance.

On its face, line certificate authority described under subsection 1 of section 393.-170 carries no obligation to serve the public generally along the path of the line. The elements of proving the public necessity of a line are different from the test applied to proving the public necessity of area certifi-cate authority. That difference is reflected in the distinct rules for each promulgated by the Commission at 4 CSR 240–2.060(2). Union Electric now argues that the distinction has been so blurred that the two types of authority should be considered interchangeable.

It is understandable that the distinction between an area and line certificate has been unclear given the historical development of utility law in Missouri and the Commission's guiding purpose, among others, of avoiding duplication of electrical distribution facilities. In *Cuivre River Electric Cooperative, Inc. v. Missouri Edison Co.*, 7 Mo. PSC (N.S.) 118 (1956), the Commission established the precedent for allowing reasonable extensions from certificated lines for reasonable purposes where no other regulated utility service was available. *Id.* at 120. Under similar circumstances in *Re Diekroeger*, 9 Mo. PSC (N.S.) 127 (1959), the privilege of making reasonable extensions was raised to the level of a duty to serve within the utility's professed service area. *Id.* 139–40. The common denominator in both instances was the existence of unregulated competition for customers from a Chapter 394 rural electric cooperative. Despite these accommodations the basic rule remains that the Commission must deal with the utility and the affected public within the framework of authority sought by the utility and granted by the Commission after applying the scrutiny of proper administrative processes.

■ Whether the Commission's Order had any harmful effect on Union Electric's franchise authority turns on the acceptance of Union Electric's view of what exactly a franchise represents. Utility franchises are no more than local permission to use the public roads and right of ways in a manner not available to or exercised by the ordinary citizen. The granting authority does not gain a right to dictate the level of utility business activity nor may it purport to grant an exclusive franchise. *State ex inf. Chaney v. West Missouri Power Company*, 313 Mo. 283, 281 S.W. 709 (1926), (Mo. Constitution Art. 3, § 40(28); Article 1, § 13). The statutory scheme at Section

393.170.2, RSMo 1986 establishes two layers of oversight by providing that the rights and privileges granted by a franchise may not be exercised without first having obtained Commission approval. A Commission certificate becomes an additional condition imposed by the State on the exercise of a privilege which a municipality or county may give or refuse under its delegated police power. *State ex rel. City of Sikeston v. Public Service Commission of Missouri*, 336 Mo. 985, 82 S.W.2d 105, 108–09 (1935).

■ A franchise under these constraints and limitations cannot be transfigured into a contract subject to impairment as Union Electric argues. Only in Commission dicta explaining its holding in *Re Union Electric Company*, 3 Mo. PSC (N.S.) 157 (1951) does the notion of contract rights get mistakenly introduced and tied to the franchise concept. A franchise is not truly a contract but merely a license for a term of years. As a license it promotes civic responsibility and exemplary corporate conduct on the part of the utility.

■ Whether it is a license or a contract, a franchise only confers the privilege the sovereign can grant such as the right to use the public ways in a manner not available to the ordinary citizen. Union Electric's franchise to use the public roads and right of ways of St. Charles County carries no assurance that it may provide electricity to every customer who may locate along those roads. Union Electric must initially compete for customers with the rural electric cooperative operating in the same area pursuant to a legislatively granted franchise. *See Missouri Utilities Company v. Scott–New Madrid–Mississippi Electric Cooperative*, 475 S.W.2d 25 (Mo. banc 1971). Under Union Electric's reasoning, the franchise granted to it by St. Charles County must necessarily impair the contract the State made with the State's rural electric cooperatives.

■ The cases referred to by Union Electric are also inapplicable to this case. In *Re Union Electric Company*, the question was whether Union Electric needed formal Commission approval of the exercise of franchises granted by twelve municipalities in St. Louis County. The Commission had previously granted an area certificate encompassing these municipalities and had approved Union Electric exercise of county court franchises granted to Union Electric's predecessors to maintain poles and lines over and along public roads. *Id.* at 159. Union Electric's rights to so use the public right of ways was held to not be revoked by municipal incorporation or annexation of formerly rural areas. The Commission decision here was consistent with *Re Union Electric Company* in that it did not purport to limit Union Electric's use of public right of ways. That is not to say, however, that the Commission is powerless to decide whether it is appropriate for Union Electric to serve a particular new customer. Prevention of unnecessary duplication and undesirable competition is within the scope of Commission jurisdiction. *City of Sikeston*, 82 S.W.2d at 109.

In *Re Bell*, 3 Mo PSC (N.S.) 320 (1951), the Commission dealt with whether or not a public utility had to have Commission authority to acquire a municipal franchise from a private party in an area in which the utility was already certificated by the Commission. *Id.* at 322. Again, the utility had been previously granted an area certificate in the relevant unincorporated area so it had the present right to exercise the franchise without regard to the privilege subsequently acquired from a private franchise holder. *Id.* at 323.

In *Re Joplin Water Co.*, 21 Mo. PSC 222 (1934), a private supplier of water had obtained a certificate for a specified territory and the Commission stated that he had the right to expand service in the certificated area if he had the capacity to do so regardless of annexation by the City. *Id.* at 229. All these cases indicate that an existing area certificate granted to a utility for an area that later becomes incorporated cannot be revoked by another utility claiming a superior right to serve on authority of a franchise with the newly incorporated or expanded municipality.

In the present case, Union Electric does not have an area certificate in the area which has now been incorporated by the City of Lake St. Louis. The line certificate the Commission granted to Union Electric is not revoked by the area certificate granted to CRESCO. The cases cited by Union Electric refer to the impairment of a privilege which is clearly not the type of privilege vested in Union Electric by virtue of its line certificate.

There is no evidence in the record to suggest that Union Electric has lost its right to install poles along the roads of St. Charles County. A proper interpretation of the principal Commission decision it relies on is that the supplier inside an expanding city is not automatically allowed an increase in regulatory authority to match the new geographic limits of the city. It follows that a factor involved in that decision is the physical presence and operating authority of another supplier in the area gained. The obvious public benefit derived is avoidance of duplicated services and conservation of resources. If both companies operated pursuant to an area certificate it would be more reasonable to let the former county supplier serve part of the city rather than attempt to oust one or dilute the service base of each.

The Commission considered all of the above-stated information when it granted CRESCO's area certificate for the City of Lake St. Louis in Case No. EA–86–13. It was well aware of Union Electric's line authority and the extent of Union Electric's facilities along Highway 40/61 through Lake St. Louis and made reasonable provision for Union Electric to continue to serve its existing customers. Union Electric's county franchise was not effected here and is not material to the Commission's decision.

Union Electric has cited no case precedent fully on point and controlling on the present facts. The key question raised in Union Electric's appeal turns on the degree of regard or priority the Commission is historically bound to bestow on Union Electric's line certificate. The precedents, including those cited by Union Electric, reflect that the Commission has wide latitude in this area. *Re Central West Utility Company,* 5 Mo. PSC (N.S.) 332 (1954), has nothing to say about revoking rights and duties associated with a line certificate as Union Electric suggests. Rather, that case dealt with competing gas utilities seeking to serve the same area and ultimately allowed one to build a gas transmission line across the certificated area of the other with the restriction that it would not serve customers off that pipeline within the territory previously allocated to the competitor. Applied here, *Re Central West Utility* affirms the prerogative of the Commission to find that a line certificate does not carry the same rights as an area certificate and that the public duty associated with a line certificate may certainly be suspended by the Commission in the public interest.

The holding of *Re Central West Utility* has the additional effect of refuting the simplistic proposition regarding the Commission's power to make orders restraining utility service off a certified line which Union Electric attributes to *Re Holtmeier,* 25 Mo. PSC 471 (1941). In *Re Holtmeier,* the line was built and was already in service to carry energy across uncertified territory to areas certified for service. The challenge to the line's existence came from a group who feared that the presence of the line would adversely impact their ability to organize rural electric cooperative service in the same area. The Commission found that since it had already granted a line certificate and the certificate authority had been exercised within two years and thus avoiding automatic expiration, it had to accept the line as an accomplished fact. *Id.* at 474.

The unregulated competition in *Re Holtmeier* is not due the same deference as the regulated competition holding an area certificate as in *Re Central West Utility.* In *Re Holtmeier,* any limitation on use of the line may have constituted revocation of a privilege to the detriment of the public located near the line and desiring regulated utility service. The true limitation on certificate revocation rested on the fact that the line was already in service. *Id.* Dilution of authority is a foreign concept without substance or force when applied to a grant of permission to build a line along a designated route. Justification of the pub-

lic need for that line turns on how it supports the entire distribution network. Only as an accommodation and to prevent needless duplication is the utility allowed to make reasonable extension from the line for retail service. Any restriction on those extensions where the line crosses the certificated area of another supplier does not affect the underlying authority to operate and maintain the line.

Any derogation of Union Electric's rights claimed on this appeal took place, if at all, in the CRESCO certificate case, EA–86–13, where Union Electric intervened and participated in its own interest. One result there was that Union Electric was allowed to continue to serve customers it served prior to CRESCO's certificate. In the case at bar, the Commission did not establish new rules or renounce old precedents, but rather issued its reasonable and lawful order based on its assessment of the public interest and on the facts presented. The effect of its Order serves the guiding purpose of preventing wasteful duplication and harmful competition.

We affirm the judgment of the Commission.

All concur.